IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-05-549 |
| | § | C.A. No. C-06-206 |
| MARCOS RODRIGUEZ-VILLA, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Marcos Rodriguez-Villa's ("Rodriguez") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 with supporting memorandum, which was received by the Clerk on May 9, 2006. (D.E. 33, 34).[1]  The Court ordered the government to respond. (D.E. 36).  After seeking and receiving an extension of time to respond (D.E. 37, 38), the government filed a combined response, and motion to dismiss, or, in the alternative, for summary judgment on September 18, 2006. (D.E. 41).  Rodriguez had until October 23, 2006 to reply. (See D.E. 36 (giving Rodriguez 30 days after service of the government's response to reply)).  To date, he has not filed a reply.  As discussed in detail herein, one of Rodriguez's two claims is subject to dismissal because he waived his right to file that claim.  His other claim, which falls outside the scope of his waiver, fails on its merits.  For these reasons, the Court DENIES his § 2255 motion.  Additionally, the Court DENIES Rodriguez a Certificate of Appealability ("COA").

---

[1] Dockets entries refer to the criminal case, C-05-cr-549.

1

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

### A. Summary of Offense[2]

From 1997 to August 2005, Rodriguez and a number of other individuals, indicted and unindicted, were part of a scheme to purchase and resell authentic identification documents, including Social Security cards, birth certificates, and marriage licenses. The documents were purchased from willing sellers in or around Alice, Corpus Christi and Robstown, usually for either $100 or $150 per document. The documents would then be shipped, via commercial carrier, to locations elsewhere, including south of Corpus Christi and to an address in Kansas. Once they arrived, they would be sold to illegal aliens for approximately $400 to $500 each.

Several hundred people were involved in the scheme. Rodriguez was a mid-level manager who recruited people in the South Texas area to solicit the sale of documents and also recruited people to mail the documents to Kansas. On August 18, 2005, a United Parcel Service supervisor contacted agents with the Social Security Administration - Office of Inspector General ("SSA-OIG") and informed them that an Express Envelope had been presented by a Hispanic male for shipment to Dodge City, Kansas.

Based on prior information received by SSA-OIG agents, a federal search warrant was obtained for the envelope. Inside, agents found two authentic Social Security cards and corresponding birth certificates. A Cooperating Witness ("CW"), who was the individual who had presented the envelope for shipment, was subsequently arrested. The CW admitted that he had been sending

---

[2] The offense conduct as set forth herein is derived from Paragraphs 4 through 21 of the Presentence Investigation Report ("PSR").

identification documents to Dodge City, Kansas and Brownsville, Texas for Rodriguez for approximately two years and that he knew of others who had been recruited by Rodriguez to sell him their identification documents for between $100 and $150.

On August 22, 2005, Rodriguez consented in writing to a search of his bedroom in Corpus Christi, Texas by federal agents. On the chest of drawers in his bedroom, agents recovered the UPS receipt for the package containing the identification documents that the CW had presented to UPS for shipment four days earlier. After being contacted by federal agents, the true owner of the document told agents that he and his brother sold their identification documents to a friend of his who paid them $100 each and told them that the documents would be sold to illegal aliens so that they could work in the United States.

**B.     Criminal Proceedings**

On September 14, 2005, Rodriguez was charged in a four count indictment with two counts of knowingly and intentionally possessing documents procured by fraud or unlawfully obtained prescribed by statute or regulation for entry into the United States, in violation of 18 U.S.C. §§ 1546(a) and 2. Count One related to the two Social Security cards found in the UPS envelope. Count Two related to the two birth certificates found in the UPS envelope. He was also charged with two counts of knowingly and intentionally transferring, possessing or using, without lawful authority, a means of identification of another person, during and in relation to a violation of Title 18 United States Code, Section 1546(a), in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. Count Three related to the Social Security cards and Count Four related to the birth certificates.

In exchange for his guilty plea to Counts One and Three and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive maximum credit for acceptance of responsibility, to recommend a sentence at the lowest end of the applicable guideline

range and to move to dismiss the remaining counts at the time of sentencing. (D.E. 22 at ¶ 2). The plea agreement included a voluntary waiver of Rodriguez's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. §3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal his conviction, the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. §2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 22 at ¶ 7) (emphasis in original). The agreement was signed by both Rodriguez and his counsel, David Diaz.

At Rodriguez's rearraignment, the Court specifically questioned Rodriguez under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing right to file a § 2255 motion. After discussing his waiver of his appellate rights, the Court admonished:

> **THE COURT:** You also give up another valuable right that's not a trial right in this, you give it up in this plea agreement. That is the right to file a post-conviction remedy. It's also called a writ of habeas corpus or a statutory 2255. You could ordinarily have filed that type of a writ to try to set aside your judgment of conviction and/or your sentence by challenging such matters as constitutionality, jurisdiction or ineffective assistance of counsel, to name a few. But if you go forward with this plea agreement, you give up that right forever.
>
> ...
>
> Do you understand these matters ... Mr. Rodriguez-Villa?
>
> **DEFENDANT RODRIGUEZ-VILLA**: Yes.

(D.E. 40, Rearraignment Transcript ("R. Tr.") at 22).

4

Also at the rearraignment, Assistant United States Attorney Mark Patterson summarized Rodriguez's plea agreement, and included a statement that "[e]ach Defendant is waiving his rights to appeal, including his rights under Title 28, Section 2255." (R. Tr. at 24). Immediately following that summary, Rodriguez testified that the plea agreement was his, it was correct, that it was the entire agreement, and that he understood it. (R. Tr. at 24). The Court showed Rodriguez a written copy of the plea agreement. Rodriguez testified that the agreement was his, that he had signed the last page, and it had been read to him completely in Spanish and he had discussed it completely with his attorney before signing it. (R. Tr. at 25-26). It is clear from the foregoing that Rodriguez's waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR"). (D.E. 21). The PSR calculated Rodriguez's base offense level for Count One at 11. (PSR at ¶ 11). It added nine levels pursuant to U.S.S.G. § 2L2.1(b)(2)(C) because, based on relevant conduct, the offense involved 100 or more documents. (PSR at ¶ 27). It also added a three-level adjustment pursuant to U.S.S.G. § 3B1.1(b), because the defendant acted as a manager or supervisor in the offense. The PSR recommended that Rodriguez be given a three-level credit for acceptance of responsibility, thereby resulting in a total offense level of 20. (PSR at ¶¶ 26-35). For Count Three, the PSR noted that the guideline for a violation of § 1028A(a)(1) is found in U.S.S.G. § 2B1.6(a) which states the guideline sentence is the term of imprisonment required by statute, which is two years pursuant to 18 U.S.C. § 1028A(a)(1).

When coupled with his criminal history category of I, his resulting guideline sentence for Count One was a term of imprisonment of 33 to 41 months. (PSR at ¶¶ 58). For Count Three, a 24-month term of imprisonment, to be served consecutively to the sentence imposed in Count One was required.

(Id.). Neither the government nor Rodriguez filed any objections to the PSR. (D.E. 25; PSR at Addendum, page 1).

Sentencing was held on January 13, 2006. (D.E. 27). (See generally D.E. 39, Sentencing Transcript ("S. Tr.")). The government recommended the lowest end of the guidelines on Count One, consistent with its obligations in the plea agreement, and Rodriguez's counsel asked for a downward departure on Count One to 24 months. The Court sentenced Rodriguez to 33 months on Count One, to be followed by a consecutive 24-month sentence on Count Three. (S. Tr. at 9; D.E. 31). The Court also imposed a three-year term of supervised release, and a $100 special assessment. (D.E. 30, 31). Judgment of conviction and sentence was entered January 23, 2006. (D.E. 31). Consistent with his waiver of appellate rights, Rodriguez did not appeal. Rodriguez's timely § 2255 motion was received by the Clerk on May 9, 2006, along with a supporting memorandum. (D.E. 33, 34).

### III. MOVANT'S ALLEGATIONS

Rodriguez asserts two primary claims. First, he claims that his counsel failed to investigate his case properly. (D.E. 34 at 4-6). In particular, he claims that he did not possess the documents that he was charged with possessing and pleaded guilty to possessing, and that his counsel should have known that he was therefore not guilty of the charge in the indictment. He claims that, had his counsel cross-examined a Mr. Suarez, it would have come to light that the documents were in the house of Mr. Suarez and not in Rodriguez's possession.[3]

Second, Rodriguez claims that he received ineffective assistance of counsel because his counsel advised him to plead guilty instead of proceeding to trial. (D.E. 34 at 7-9). Rodriguez alleges that his

---

[3] In this section of his motion, Rodriguez also makes the cursory allegation, with no supporting details, that he "was told by Mr. Diaz that he cannot appeal his case, and that [sic] the reason petitioner did not appeal his case." (D.E. 34 at 6). He does not appear to be making a separate claim based on this allegation, however, nor does he state that he wishes to enforce his appellate rights.

counsel misled him regarding the possible sentence he would receive, telling him that he would likely receive a sentence of 15 to 18 months, and that the highest sentence he would receive is 36 to 40 months. (D.E. 34 at 4). He claims that if his counsel had not told him to plead guilty, he would have proceeded to a trial and the outcome would have been different.

The government has moved for dismissal or, in the alternative, for summary judgment against Rodriguez's motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights. In the alternative, the government contends that his motion is subject to dismissal or summary judgment because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations. (D.E. 21 at 1). The government has also provided an affidavit from Rodriguez's counsel during the underlying proceedings, David Diaz.

For the reasons set forth herein, Rodriguez's claims fail.

## IV. DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Rodriguez has procedurally defaulted his claims by failing

7

to appeal. Rather, the Court concludes that he validly waived his first claim, which is unrelated to his plea, and thus it does not reach the merits of that claim. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

His second claim, i.e., that he received ineffective assistance of counsel when entering into the plea agreement, however, falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to this claim.

**B.      Alleged Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter

v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Rodriguez argues that his attorney was deficient for informing him that he would likely receive a sentence of 15 to 18 months, and for telling him that the highest sentence he would receive is 36 to 40 months. When viewing the record as a whole, it is clear that Rodriguez cannot show prejudice and thus is not entitled to relief as to his claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Rodriguez must show that, absence his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here. The rearraignment transcript clearly establishes that Rodriguez's decision to plead guilty was his own and that it was entirely voluntary.

At his rearraignment, Rodriguez testified that he had had enough time to talk with his attorney, that he had told his attorney everything he knew about the charges against him, that his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 14-15). The Court informed Rodriguez of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 20-23).

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Rodriguez the maximum punishment that he might receive. Specifically, the Court informed him that he faced a maximum punishment on Count One of ten years in prison and a maximum fine of $ 250,000. The Court also

informed him that there was a mandatory $100 special assessment, and a maximum supervised release term of three years. (R. Tr. at 27-28). Rodriguez testified that he understood. (R. Tr. at 28). Rodriguez further testified that there had not been any other agreements or promises made to him that were not in the written plea agreement, and that no one had promised him leniency or that he would get a motion for downward departure or safety valve relief. (R. Tr. at 24-25). He later testified that no one had forced him in any way to plead guilty, that his decision to plead guilty was entirely voluntary and that he understood that if his sentence was more severe than he expected, he would still be bound by his plea. (R. Tr. at 35).

Rodriguez told the Court that his attorney had discussed with him how the Sentencing Guidelines might apply in his case and that he understood that certain facts could increase his sentence. (R. Tr. at 31-32). The Court specifically mentioned the possibility that he could be given an enhancement for a leadership role, and that he could be sentenced to a higher sentence based on the number of documents involved. (R. Tr. at 32-34). He testified that he understood. (Id.).

The transcript also establishes that Rodriguez understood that only the Court could determine the sentence that he would ultimately receive and that any one else's estimate, including his attorney's, would not be binding on the Court:

> **THE COURT:** Do you understand that your attorney's opinion of the guidelines is not necessarily that of mine, and that I'm not going to be able to determine your sentence till time of sentencing, after which you've already had an opportunity, with the U.S. Attorney, to challenge the facts reported by the Probation Office; and that after it's been determined what advisory guideline applies to your case, if it is applicable, then I have the authority to impose a sentence that is higher or lower than the advisory guidelines; and that even though you've given up your right to appeal, the U.S. Attorney has kept his right to appeal; that the final decision as to what your sentence will be rests with me, not with the U.S. Attorney. The U.S. Attorney does not represent the Court nor does it speak for the Court in this case. Do you understand these matters ... Mr. Rodriguez-Villa?

**DEFENDANT RODRIGUEZ-VILLA:** Yes, I understand.

(R. Tr. at 34-35).

Rodriguez's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Rodriguez's sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, he knew that any estimates by his attorney were not binding on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had forced or induced him to plead guilty.

Furthermore, at sentencing, after having seen the PSR and his guideline range, Rodriguez reaffirmed that he was still satisfied with the advice and efforts of his attorney. (S. Tr. at 4). This fact further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence.

Rodriguez seems to be claiming that his counsel "promised" him he would receive a specific sentence, as opposed to merely underestimating his exposure. He may proceed on such a claim, however, only under narrow circumstances. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id. Rodriguez has not alleged any facts about the identity of any witnesses to the promise, and has not provided any evidence showing the merit of his allegations.

11

Thus, he would be unable to obtain relief under the Cervantes exception.

In short, Rodriguez cannot overcome his testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that he would have insisted on going to trial but for counsel's performance. Thus, Rodriguez cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether his counsel's performance was deficient.[4] His claim of ineffective assistance in the plea process fails.

Because the Court concludes that Rodriguez's sole challenge to the validity of his plea agreement fails, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claim.

## C.  Waiver of § 2255 Rights

As noted, it is clear from the rearraignment that Rodriguez understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 22). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Rodriguez's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his wavier was knowing and voluntary. Rodriguez's remaining claim, which alleged a failure to investigate by his counsel clearly falls within the scope of that waiver.

In sum, while Rodriguez's ineffective assistance claim as to his plea is denied on the merits,

---

[4] The Court notes, however, that Mr. Diaz's affidavit flatly denied promising Rodriguez any particular sentence. He states: "No 'Promises' of any months were mentioned to the defendant. The range of 33 to 41 months was explained to the defendant plus the (24) months required in Count One."   (D.E. 41 at Exh. A, p. 2).

12

his remaining allegations of ineffective assistance fall within the scope of his waiver. Therefore, they are not properly before the Court. For these reasons, Rodriguez's § 2255 motion is DENIED in its entirety.

**D.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Rodriguez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show

both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Rodriguez is not entitled to a COA as to either of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claim concerning his counsel's failure to investigate.

## V.  CONCLUSION

For the above-stated reasons, Rodriguez's motion under 28 U.S.C. § 2255 (D.E. 33) is DISMISSED WITH PREJUDICE. The Court also DENIES Rodriguez a Certificate of Appealability.

ORDERED this 18th day of November, 2006.

_____
Janis Graham Jack
United States District Judge